1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10

BRENDA L. DAVIS,

CASE NO. 15-cv-05006 JRC

11

                    Plaintiff,

ORDER ON PLAINTIFF'S
COMPLAINT

12

        v.

13

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

14

15

                    Defendant.

16

17        This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18   Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19   Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States

20   Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 13, 14, 15).

21        After considering and reviewing the record, the Court concludes that the ALJ

22   failed to provide specific and legitimate reasons supported by substantial evidence in the

23   record for rejecting the opinion of plaintiff's treating specialist as the only record that the

24

specialist did not review did not contradict the relevant opinion that plaintiff needs to elevate her foot for fifteen minutes after an hour of sitting.

The ALJ also failed to provide clear and convincing reasons for failing to credit fully plaintiff's allegations because the medical record supports her allegations, there is no inconsistency between plaintiff's tax returns and her testimony at the hearing, and her successful cessation of smoking would not result in her ability to work.

Since there is a lack of substantial evidence to support the ALJ's determination to deny benefits and if the improperly discredited evidence were credited in full then the ALJ would be required to find plaintiff disabled. There are no issues that remain to be resolved and further administrative proceedings would serve no useful purpose.

Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner with a direction to award benefits.

<u>BACKGROUND</u>

Plaintiff, BRENDA L. DAVIS, was born in 1961 and was 50 years old on the alleged date of disability onset of July 28, 2011 (*see* AR. 181-90, 194-203). Plaintiff attended high school, but did not receive a diploma and has not obtained a GED (AR. 55).  Plaintiff has work experience as a medical receptionist, medical records clerk, warranty clerk, and dispatcher/answering service (AR. 67, 289-96).

The following background information is quoted from plaintiff's opening brief (Dkt. 13, pp. 2-3). Defendant did not include any background or procedural history in the response brief, and does not dispute any of plaintiff's discussion of the background facts (*see* Dkt. 14, p. 2).

ORDER ON PLAINTIFF'S COMPLAINT - 2

[Plaintiff] was in an automobile accident on July 28, 2011, her alleged onset date ("AOD"), in which she shattered bones in her right ankle. At the hospital, she was told that she needed surgery, but it was not offered because she had no medical insurance. (AR. 68). She saw Dr. Agtarap, an orthopedic surgeon, seven days later, but he told her he could not do surgery on her ankle at that time because of fracture blisters. [Plaintiff] realized that she would be unable to return to her job as a medical transcriptionist anytime soon, and filed claims for Social Security Disability and SSI benefits (AR. 181-203).

[Plaintiff] saw Dr. Agtarap twice more over the following week, but he declined to help her. (AR. 339-340). She then contacted the Orthopedic Clinic at Harborview Medical Center, but could not get an appointment until September 13, 2011. At that appointment, Dr. Zeltser wrote:

> Given the degree of articular comminution displacements and hindfoot deformity seen on her injury films and CT, we would have recommended operative management initially. However, she is now six weeks out and an open reduction and internal fixation at this point would not be feasible.

(AR. 380). Understanding that she would have to learn to live with the deformity, [plaintiff] sought treatment for the symptoms from podiatrist Dr. Heck. He noted "pain and swelling" due to her severe post-traumatic arthritis to her right subtalar joint, status-post calcaneal fracture. (AR. 396-97). Dr. Heck prescribed braces, and advised her to follow up with other treatment options after she was able to obtain disability medical insurance (AR. 410-11). Her disability claim was denied, and she was unable to procure medical insurance, so she returned to work, very part-time, doing transcription work at home where she could elevate her foot as needed. (AR. 60-61, 64-66). Dr. Heck opined that this practice of elevating her foot for 15 minutes after an hour sitting was reasonable in light of the nature of her injury. (AR. 413-14).

(Dkt. 13,pp. 2-3).

According to the ALJ, plaintiff has at least the severe impairment of right foot impairment (20 CFR 404.1520(c) and 416.920(c)) (AR. 34).

At the time of the hearing, plaintiff was living in a house with her boyfriend (AR. 56, 59).

1

<u>PROCEDURAL HISTORY</u>

2

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42

3

U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42

4

U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and

5

following reconsideration (*see* AR. 82-89, 90-97, 100-11, 112-22). Plaintiff's requested

6

hearing was held before Administrative Law Judge Scott R. Morris ("the ALJ") on March

7

6, 2013 (*see* AR. 49-79). On August 2, 2013, the ALJ issued a written decision in which

8

the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see*

9

AR. 29-48).

10

In plaintiff's Opening Brief, plaintiff raises the following issues:  (1) Whether or

11

not the ALJ reasonably weighed the medical opinion evidence; (2) Whether or not the

12

ALJ reasonably evaluated plaintiff's credibility; and (3) Whether or not the ALJ's

13

findings as to plaintiff's RFC are supported by substantial evidence (*see* Defendant's

14

Brief, Dkt. 14, p. 2).

15

<u>STANDARD OF REVIEW</u>

16

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

17

denial of social security benefits if the ALJ's findings are based on legal error or not

18

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

19

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

20

1999)).

21

//

22

//

23

24

<u>DISCUSSION</u>

**(1)    Whether or not the ALJ reasonably weighed the medical opinion evidence.**

Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Jacob Heck, DPM (doctor of podiatric medicine), the treating specialist (*see* Dkt. 13, pp. 3-6). Dr. Heck offered an opinion that plaintiff needed to elevate her foot for fifteen minutes after an hour sitting because of plaintiff's comminuted calcaneal fracture with resultant arthroplasty of subtalar joint and post-traumatic arthritis (*see* AR. 413-14).

Defendant contends that the ALJ properly rejected Dr. Heck's opinion because Dr. Heck did not have "the opportunity to review all of plaintiff's medical records, specifically including the results of Dr. Bunnell's later physical examination" (Dkt. 14, p. 2 (*citing* AR. 41)). Plaintiff contends that the "ALJ's action in seeking another medical opinion post-hearing may have been an attempt to manufacture conflict with Dr. Heck's opinion." The Court also notes that the ALJ did not provide Dr. Heck's opinion to Dr. Bunnell and did not ask Dr. Bunnell if the foot elevation was indicated (*see* Dkt. 13, p. 5). As noted by plaintiff, an "ALJ is not permitted to manufacture a conflict where none exists, and then attempt to use that alleged conflict to reject the opinion of a treating specialist" (Dkt. 13, p. 5 (*citing Regenniter v. Commissioner*, 166 F.3d 1294, 1299 (9th Cir. 1999)); *Garisson v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014)). Importantly, Dr. Bunnell provided no opinion regarding plaintiff's alleged need to elevate her foot after an hour of sitting (*see* AR. 416-25). Therefore, Dr. Bunnell does not contradict Dr. Heck's opinion on this point.

1    "A treating physician's medical opinion as to the nature and severity of an

2    individual's impairment must be given controlling weight if that opinion is well-

3    supported and not inconsistent with the other substantial evidence in the case record."

4    *Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at

5    *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); *see also Smolen v. Chater*,

6    80 F.3d 1273, 1285 (9th Cir. 1996). When a treating physician's opinion is contradicted,

7    that opinion can be rejected "for specific and legitimate reasons that are supported by

8    substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996)

9    (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722

10   F.2d 499, 502 (9th Cir. 1983)).

11   Here, the ALJ relied on a number of findings when he failed to credit fully Dr.

12   Heck's opinion (*see* AR. 41, 413-14). The ALJ noted that Dr. Heck's opinion is more

13   limiting than the opinions of other medical experts, however this only establishes the

14   standard that the ALJ must meet in order to reject the opinion. As noted, in order to reject

15   a treating physician's opinion that is contradicted, the ALJ must provide "specific and

16   legitimate reasons that are supported by substantial evidence in the record." *Lester*,

17   *supra,* 81 F.3d at 830-31 (*citing Andrews*, *supra,* 53 F.3d at 1043; *Murray*, *supra,* 722

18   F.2d at 502). Furthermore, as noted by plaintiff, the opinions of the State Agency

19   consultants who never met or examined plaintiff "cannot provide the basis for rejecting

20   Dr. Heck's opinion" (Dkt. 13, pp. 4-5 (*quoting Lester, supra,* 81 F.3d at 831 ("the

21   opinion of a non-examining physician cannot by itself constitute substantial evidence that

22   justifies the rejection of an opinion of either an examining physician or treating

physician")). The Court also finds persuasive plaintiff's argument that the opinion of Dr.

Bunnell does not provide a basis to reject the opinion of Dr. Heck because, as noted by

plaintiff, Dr. Bunnell "did not address the issue of [plaintiff's] need to elevate her foot; he

did not conclude that she did NOT have to elevate, and was apparently not asked about

this by the ALJ" (*see id*. (*citing* AR. 424)). As noted by plaintiff, Dr. Bunnell's "opinion

is not contrary to Dr. Heck's on that particular issue" (*id*.).

 Another reason provided by the ALJ for his failure to credit fully Dr. Heck's

opinion is that his opinions regarding plaintiff's "functional limitations are more limiting

than is supported by the medical evidence of record" (AR. 41). However, the ALJ failed

to point out any objective medical evidence inconsistent with Dr. Heck's opinion. In

addition, the Court concludes that the finding by the ALJ that this opinion by Dr. Heck is

not supported by the medical evidence of record is a finding that is not based on

substantial evidence in the record as a whole, as discussed below (*see infra* section 2).

 Another reason given by the ALJ for rejecting the opinions of Dr. Heck is that

those opinions "are more limiting than is supported by the medical evidence of record"

(*see* AR. 36).  This reason is not supported by substantial evidence in the record.

Plaintiff's injury occurred on July 28, 2011, and, as noted by the ALJ, "[Dr.] George

Wang, M. D., wrote that medical imaging of that claimant's ankle immediately following

the motor vehicle accident showed a very commuted, impacted fracture involving the

right calcaneus [and showed that] the right peroneal tendons were laterally subluxed

relative to the lateral malleolus" (AR. 36 (*citing* AR. 344)). The Court notes that Dr.

Wang also noted that there was "extensive destruction of the posterior subtalar articular

surface with rotation of the lateral portion of the articular surface to face anteriorly" (*id.*).

Dr. Wang observed "diffuse soft tissue swelling" (*id.*).

Also as noted by the ALJ, on August 16, 2011, Dr. L. Anthony Agtarap, M. D., indicated that plaintiff still had "moderate swelling and ecchymosis throughout the ankle and foot" (AR. 37 (*citing* AR. 340-41)). As noted by the ALJ, on September 1, 2011, plaintiff "endorsed swelling anytime her foot was down" (AR. 37 (*citing* AR. 360)). Also as noted by the ALJ, on September 13, 2011, plaintiff still "had significant various malalignment of the hindfoot with the residual swelling about the ankle and hindfoot, with mostly healed fracture blisters" (*id.* (*citing* AR. 380)). At this time, medical imaging "showed comminuted calcaneus fracture with shortening and loss of calcaneal, but evidence of bony healing" and also indicated that "there is lateral wall blowout with resultant varus calcaneal alignment" (*id.; see also* AR. 380). As noted by the ALJ, at that time, the doctor still "encouraged the claimant to remain non-weight-bearing," but to remain as active as possible (*id.*). This comports with plaintiff's allegation, as noted by the ALJ, that plaintiff "testified that after her accident, she did not bear any weight on her ankle until the following October, at which point she began to experience worsening pain symptoms" (AR. 36).

On November 1, 2011, as noted by the ALJ, medical imaging "showed comminuted joint depression type fracture with unchanged alignment and continued interval healing" (AR. 37 (*citing* AR. 382)). Also as noted by the ALJ, on April 10, 2012, plaintiff "presented to Western Washington Foot and Ankle Specialist, alleging significant pain symptoms" (AR. 38 (*citing* AR. 395)). At this time, plaintiff indicated

1  "that her pain varied between 6 and 9 out of 10, and stated that usually it was at an 8 out

2  of 10" (*id.*).

3          On April 10, 2012, as noted by the ALJ, plaintiff "reported only moderate pain,

4  but stated that it was progressively worsening" (AR. 38). At that time, plaintiff

5  demonstrated an antalgic gait affected by a left leg limp" (*id.* (*citing* AR. 406)). As noted

6  by the ALJ, on February 8, 2013, plaintiff return to Western Washington Foot and Ankle

7  Specialists with complaints of ongoing pain, but now alleged that her foot felt cold and

8  occasionally turned purple" (*id.* (*citing* AR. 410)). Relevantly, Dr. Heck opined that

9  plaintiff reasonably has a need to elevate her foot for fifteen minutes after sitting for one

10  hour and that "after any weight-bearing activity followed by sitting with foot in [a]

11  dependent position, the foot would likely swell causing pain" (AR. 413-14). Based on the

12  discussion above and a review of the relevant record, the Court concludes that the ALJ's

13  finding that these opinions of Dr. Heck "are more limiting than is supported by the

14  medical evidence of record" is a finding that is not based on substantial evidence in the

15  record as a whole (AR. 41).

16          The final reason provided by the ALJ for his failure to credit fully Dr. Heck's

17  opinions was his finding that "Dr. Heck did not have the opportunity to review the entire

18  medical evidence of record, including Dr. Bunnell's findings, which were produced

19  subsequent to Dr. Heck's response" (AR. 41). The Court concludes that this is not a

20  legitimate reason to discount the opinions of Dr. Heck. First, plaintiff notes that the only

21  medical evidence of record that Dr. Heck could not review was the opinion of Dr.

22  Bunnell, which was requested by the ALJ after plaintiff's administrative hearing (*see*

ORDER ON PLAINTIFF'S COMPLAINT - 9

Dkt. 15, p. 2). More importantly, as noted by plaintiff, [n]either the ALJ nor the

defendant [] identified any actual medical finding that contradicted Dr. Heck's opinion"

(*id.* at pp. 1-2). As noted by plaintiff, "[o]ther medical records were silent on the issue,

including Dr. Bunnell's report, but no medical source suggested that she does <u>not</u> have to

elevate her foot" (*id.*). Furthermore, Dr. Bunnell's report includes objective evidence

supporting Dr. Heck's opinion and plaintiff's allegation regarding the need for elevation.

Dr. Bunnel noted, for instance:

> [Plaintiff] is walking with antalgic gait with difficulty weight-bearing
> throughout the right lower extremity and [is using] a single-point cane to
> provide balance and reduce pain . . . .  Right ankle plantar flexion is
> limited to 25 degrees, dorsiflexion limited to neutral, eversion limited to
> 10 degrees, inversion lacks approximately 10 degrees from neutral  . . .
> .  Fracture of the right ankle reveals marked swelling. There is
> tenderness to palpitation over the ATFL ligaments as well as just under
> the medial malleolus. Drawer test is negative. Ankle with markedly
> limited range of motion and appears to have become somewhat fixed.

(AR. 424).

For the reasons stated and based on the record as a whole, the Court concludes that

the ALJ did not provide specific and legitimate reasons supported by substantial evidence

in the record as a whole to support the ALJ's failure to credit fully Dr. Heck's opinions.

**(2)      Whether or not the ALJ reasonably evaluated plaintiff's credibility**.

If an ALJ rejects the testimony of a claimant once an underlying impairment has

been established, the ALJ must support the rejection "by offering specific, clear and

convincing reasons for doing so." *Smolen*, *supra*, at 1284 (*citing Dodrill v. Shalala*, 12

F.3d 915, 918 (9th Cir.1993)); *see also Reddick, supra*, 157 F.3d at 722 (*citing Bunnell v. Sullivan*, *supra*, 947 F.2d at 343, 346-47).

The Court does not find persuasive defendant's footnote regarding the lack of a requirement for clear and convincing reasons. The Court notes that this "clear and convincing" standard recently was reaffirmed by the Ninth Circuit. Indeed, the cases following *Bunnell* read it as supplementing the "clear and convincing" standard with the requirement that the reasons also must be "specific." (Internal citation to *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995)). Our more recent cases have combined the two standards into the now-familiar phrase that an ALJ must provide specific, clear, and convincing reasons. (*See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014)("There is no conflict in the caselaw, and we reject the government's argument that *Bunnell* excised the "clear and convincing" requirement. We therefore review the ALJ's discrediting of Claimant's testimony for specific, clear, and convincing reasons.") *See also Garrison v. Colvin*, 759 F.3d 995, 1015 n.18 (9th Cir. 2014) ("The government's suggestion that we should apply a lesser standard than 'clear and convincing' lacks any support in precedent and must be rejected").

As with all of the findings by the ALJ, the specific, clear and convincing reasons also must be supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

1    The ALJ failed to credit fully plaintiff's allegations in part with a finding that the

2    medical evidence of record does not support her alleged limitations (*see* AR. 36). As

3    demonstrated by the Court's review of the medical evidence above, *see supra*, section 1,

4    this finding by the ALJ is not supported by substantial evidence in the record as a whole.

5    Furthermore, the ALJ failed to point out any specific inconsistency between plaintiff's

6    allegations and the medical evidence of record. The ALJ's credibility determinations

7    "must be supported by specific, cogent reasons."  *Reddick v. Chater*, 157 F.3d 715, 722

8    (9th Cir. 1998) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en

9    banc*)).  In evaluating a claimant's credibility, the ALJ cannot rely on general findings,

10   but "'must specifically identify what testimony is credible and what evidence undermines

11   the claimant's complaints.'"  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006)

12   (*quoting Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999));

13   *Reddick, supra*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273,

14   1284 (9th Cir. 1996) (citation omitted).

15         Defendant argues that the ALJ cited multiple clear and convincing reasons for

16   failing to credit fully plaintiff's allegations, but defendant does not rely on the ALJ's

17   finding that plaintiff's testimony at the hearing is inconsistent with statements made in

18   her tax returns other than the finding regarding hours driven, which will be discussed

19   further below (*see* Dkt. 14, pp. 3-4; *see also* AR. 39-40). The Court agrees with

20   defendant's implicit concession. The ALJ's discussion of plaintiff's tax returns does not

21   support the ALJ's rejection of plaintiff's credibility. As noted by plaintiff, "[at] no time

22   during the hearing, [] did the ALJ ask [plaintiff] any questions about her tax returns,

taxable income, withholding, or this allegedly federal criminal activity" (Dkt. 13, p. 11 (*citing* AR. 51-78)). The Court also notes plaintiff's indication that had the ALJ "discussed it with her, he would have realized that he was working under an incorrect assumption" (*id.*). For example, as noted by plaintiff, although the ALJ found that "there is nothing in the record to support the claimant's allegation that $1,397 was withheld from income for federal income taxes," the record demonstrates that $1,397 actually was withheld (*see* AR. 232).

Defendant does rely on one aspect of the discussion regarding reports to the IRS, in that defendant indicates that "the ALJ noted the inconsistency between plaintiff's testimony that she drove as little as possible, and earlier records that showed she drove thousands of miles per year as late as 2012" (Dkt. 14, p. 3 (*citing* AR. 39)). However, this reason by the ALJ, as well, is not supported by substantial evidence in the record, as there is not substantial evidence that plaintiff drove thousands of miles per year. As noted by plaintiff in her reply, plaintiff's "tax return documents the total number of miles driven in [plaintiff's] vehicle [] not the number of miles that she personally drives" (Dkt. 15, p. 4). As noted by plaintiff, use "of a vehicle for business purposes is not limited to it being driven by just one person  .  .  .  .  and if asked, [plaintiff] would have honestly testified about how often [her boyfriend] drives her vehicle for personal use" (*id.*). Plaintiff notes that if "the ALJ truly had concerns about this, he had ample opportunity to ask her about it under oath" (*id.*). Probably most persuasive is the testimony that was included in plaintiff's hearing when plaintiff described how other people pick up and deliver product that she completes at home:

1

ALJ: And you're a scribe?
Plaintiff: I do medical transcription, yes.
ALJ: How does that work? Is it through-they send you the tapes, or how do you actually do that?
Plaintiff: My daughter works in the same building as the doctors I transcribe for. My boyfriend delivers the tapes and the flash drive to her in the morning. She takes them, drops them off at the office, and he picks them up in the evening, brings them home to me.

2

3

4

5

6

(AR. 60-61). The Court concludes that the ALJ's finding of an inconsistency between

7

plaintiff's testimony regarding how much she drives and her tax return documenting the

8

total of miles driven in her vehicle is not a finding based on substantial evidence in the

9

record as a whole, but instead is speculation. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22

10

(an ALJ may not speculate).

11

12

Finally, defendant contends that the ALJ provided clear and convincing reasons

13

for failing to credit fully plaintiff's allegations because plaintiff continued to smoke

14

despite attempts to quit (*see* Dkt. 14, p. 3 (*citing* AR. 37-38)). First, the Court notes that

15

defendant incorrectly asserts that the ALJ "noted plaintiff's inconsistent reports to

16

treatment providers regarding whether she had quit smoking" (Dkt. 14, p. 14 (*citing* AR.

17

37-38). However, the ALJ found in his written decision that plaintiff "continues to smoke

18

despite being apprised of its deleterious effect on her health and exacerbation of pain

19

symptoms" (AR. 38 (*citing* AR. 342)). According to the Ninth Circuit, "[l]ong-standing

20

principles of administrative law require us to review the ALJ's decision based on the

21

reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that

22

attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*,

23

554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196

24

1    (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir.

2    2012) ("we may not uphold an agency's decision on a ground not actually relied on by

3    the agency") (*citing Chenery Corp, supra*, 332 U.S. at 196).

4            Even if the ALJ explicitly had relied on a finding that plaintiff provided

5    inconsistent reports to her treatment providers regarding her smoking, such a finding is

6    not based on substantial evidence in the record as a whole as plaintiff was providing

7    accurate contemporaneous information regarding changed circumstances. On August 9,

8    2011, plaintiff told her doctor that she had not smoked since her last appointment (*see*

9    AR. 340). The record demonstrates that on August 4, 2011, her prior appointment,

10   plaintiff reported that she was smoking and demonstrates that the doctor instructed her to

11   quit smoking to prepare for surgery (*see* AR. 341-42). On August 4, 2011, the doctor

12   informed plaintiff that surgery was not yet possible due to the presence of fracture blisters

13   (*see* AR. 342). Although the record indicates that plaintiff did stop smoking on August 4,

14   2011, at her next appointment on August 9, 2011, the doctor told plaintiff that surgery

15   still could not be performed because her skin was not ready for an incision (*see* AR. 340).

16   The record also demonstrates that on August 16, 2011, plaintiff "was told that they would

17   not recommend a surgical treatment and would continue nonoperative management"

18   (AR. 379). Plaintiff contends that she did not start smoking again until after the doctors

19   informed her that surgery would not be performed, and the ALJ did not point to anything

20   in the record that contradicts this assertion. Based on the relevant record, the Court

21   concludes that plaintiff informing her doctor that she had not smoked since her previous

appointment, then subsequently, after she started smoking again, informing her doctor that she was smoking is not an inconsistency and does not impact plaintiff credibility.

Furthermore, perhaps most relevant, the Court finds persuasive plaintiff's argument that when relying on plaintiff's smoking, "the ALJ has misapplied the relevant federal regulation regarding non-compliance" (Dkt. 13, pp. 10-11 (*citing* 20 C.F.R. § 404.1530)).  According to the relevant federal regulation, the following is required:

> (a) What treatment you must follow. In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.

20 C.F.R. § 404.1530(a).

As argued by plaintiff, the ALJ has not cited any evidence in the record that demonstrates that if plaintiff quit smoking it would restore her ability to work (Dkt. 13, pp. 10). Although the ALJ implied that surgery was not done because plaintiff was smoking, the record does not support any such implication. On August 4, 2011, Dr. Agtarap indicated that he could not do surgery at that time "because of the large fracture blisters" (AR. 342). Although Dr. Agtarap indicated that plaintiff's smoking also was "of concern," plaintiff quit smoking at that time, and even if she had already quit previously, the fracture blisters still would have prevented surgery at that time (*see id.*).

On August 16, 2011, the treatment record indicates that the doctor's recommended plan had changed "to treat her long-term closed" (AR. 339). Although it is not clear from this report why surgery was ruled out at that time, it appears that it was due to "the risk of opening of the skin laterally and postoperative complications" (*id.*). On September 13,

2011, Dr. Zeltser opined that "she is now 6 weeks out and an open reduction and internal fixation at this point would not be feasible" (AR. 380).

The ALJ did not find that cessation of smoking would render plaintiff able to work, and in fact explicitly indicates that he was not concluding as such (*see* AR. 38). Even if he had so found, such a finding would not be supported by substantial evidence in the record as a whole. Therefore, the ALJ's reliance on plaintiff's inability to quit smoking in order to find her less than credible is not proper and does not entail clear and convincing rationale. None of the reasons supplied by the ALJ meet this standard.

**(3)     Whether or not the ALJ's findings as to plaintiff's RFC are supported by substantial evidence**.

As already discussed, *see supra*, sections 1 and 2, the ALJ did not properly reject the alleged limitation that plaintiff must elevate her foot for fifteen minutes after sitting for an hour. As the ALJ's residual functional capacity ("RFC") did not include this limitation, the ALJ's RFC is not proper. According to the Ninth Circuit, when an ALJ improperly discounts significant and probative evidence in the record favorable to a claimant's position, such as an opinion from a treating doctor, the ALJ "thereby provide[s] an incomplete residual functional capacity [RFC] determination." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).  Furthermore, when the RFC is incomplete, the hypothetical question presented to the vocational expert relied on at step five necessarily also is incomplete, "and therefore the ALJ's reliance on the vocational expert's answers [is] improper." *See id.* at 1162.

//

(4) **Whether this matter should be remanded for an award of benefits or for further administrative proceedings**.

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

At the first step, the court should determine if "the ALJ has failed to provide legally sufficient reasons for rejecting [the particular] evidence." *Smolen, supra*, 80 F.3d at 1292 (citations omitted). Next, as stated recently by the Ninth Circuit:

> Second, we turn to the question whether [or not] further administrative proceedings would be useful. In evaluating this issue, we consider [if] the record as a whole is free from conflicts, ambiguities, or gaps, [if] all factual issues have been resolved, and [if] the claimant's entitlement to benefits is clear under the applicable legal rules.

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (citations omitted). The final step is to determine whether or not "if the improperly discredited evidence [was] credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citations omitted).

The *Garrison* court found that "the district court abused its discretion by remanding for further proceedings where the credit-as-true rule is satisfied and the record

afforded no reason to believe that [the claimant] is not, in fact, disabled." *Id.* at 1021

(footnote omitted). The court noted that simply providing an ALJ with another

opportunity to reject evidence is not proper, and concluded as follows:

> Although the Commissioner argues that further proceedings would serve
> the "useful purpose" of allowing the ALJ to revisit the medical opinions
> and testimony that she rejected for legally insufficient reasons, our
> precedent and the objectives of the credit-as-true rule foreclose the
> argument that a remand for the purpose of allowing the ALJ to have a
> mulligan qualifies as a remand for a "useful purpose" under the [second]
> part of the credit-as-true analysis. (Citations to *Benecke*, 379 F.3d at 595
> ("Allowing the Commissioner to decide the issue again would create an
> unfair 'heads we win; tails, let's play again' system of disability benefits
> adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004)
> ("The Commissioner, having lost this appeal, should not have another
> opportunity to show that Moisa is not credible any more than Moisa, had he
> lost, should have an opportunity for remand and further proceedings to
> establish his credibility." (citation omitted))).

*Id.* at 1021-22.

Here, the Court already has concluded that the first step of the test has been

satisfied, that is, "the ALJ has failed to provide legally sufficient reasons for rejecting

[the particular] evidence." *Smolen, supra*, 80 F.3d at 1292 (citations omitted) *see supra*

sections 1 and 2.

The Court also concludes that the second part of the test is met. Further

administrative proceedings would not be useful because the record as a whole is free

from conflicts, ambiguities or gaps, all of the factual issues have been resolved and

plaintiff's entitlement to benefits is clear given the applicable legal rules, as will be

discussed further in the application of part three of the test, *see infra*. Dr. Heck's opinion

regarding the relevant requirement for elevation is not ambiguous and is not contradicted

by Dr. Bunnell's opinion. In fact, as noted above, Dr. Bunnell's objective findings support this limitation. Furthermore, allowing the ALJ to have another opportunity to find different reasons to reject plaintiff's allegation of a need for elevation, an allegation that is supported by her treating specialist, would "create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *See Garrison,* 759 F.3d at 1021-22 (*quoting Benecke*, 379 F.3d at 595).

With respect to the third part of the test, here, the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's need to elevate her foot for fifteen minutes after an hour of sitting, *see supra,* sections 1 and 2. The vocational expert ("VE") testified that if an individual with plaintiff's RFC also had such a need to elevate her foot for fifteen minutes after an hour of sitting, such an individual would not be able to perform any jobs existing in significant numbers in the national economy (AR. 77-78). Therefore, it is clear that if the ALJ were required to credit-as-true the improperly discredited evidence, the ALJ would be required to find plaintiff disabled. The Court concludes that this is one of the rare circumstances in which further administrative proceedings would serve no useful purpose and an award for benefits is proper. Failure to do so would be an abuse of discretion. *See Garrison*, 759 F.3d at 1021.

CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for an award of benefits.

1    **JUDGMENT** should be for plaintiff and the case should be closed.

2    Dated this 22nd day of June, 2015.

3

4    _____

5    J. Richard Creatura
     United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24